UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD M. CARTER,

                    Petitioner,

v.                                             Case No.  8:03-cv-1194-T-17TBM

DON S. GLADISH,

                    Respondent.

_____/

## **ORDER**

This cause is before the Court on Petitioner Richard Carter (Carter's) 28 U.S.C. § 2254 petition for writ of habeas corpus.  Carter challenges his conviction and sentence entered by the Twelfth Judicial Circuit, Manatee County, Florida.

BACKGROUND

Richard Carter was charged in a joint information [also charging offenses against codefendant William Palmer]  in case no. 97-2864F with attempted robbery with a firearm while wearing a mask, armed kidnaping while wearing a mask, and armed burglary while wearing a mask. Carter was also charged in a joint amended information in case no. 97-2865F with two counts of robbery with a firearm while wearing a mask, two counts of armed kidnaping while wearing a mask, one count of armed burglary of a structure while wearing a mask, one count of aggravated assault with a firearm while wearing a mask, one count of petit theft, and one count of possession of a firearm by a convicted felony while wearing a mask. The offenses occurred October 19, 1997.

On May 12, 1998, the state nolle prossed counts two, three, and four in case no. 97-2865F. On May 26, 1998, Carter, represented by Laurence Eger, Assistant Public Defender, appeared before the Honorable Janette Dunnigan, state trial court judge, and entered a negotiated plea of nolo contendere to the remaining charges in return for a sentencing cap of twenty-six-and-one-half years incarceration. A pre-sentence investigation report was ordered and on July 24, 1998, sentencing proceedings were held. Following testimony and argument, the state trial court imposed an aggregate prison sentence of 25 years, which incorporated concurrent sentences and three-year minimum mandatory prison terms.

Carter appealed his state judgments. Carter's appellate counsel filed an Anders v. California, 386 U.S. 738 (1967) brief, finding no meritorious argument to support a contention of significant reversible error. Although he was afforded an opportunity to file a pro se brief, Carter did not do so. On November 17, 1999, the state district court of appeal per curiam affirmed in case no. 2D98- 3241. Carter v. State, 747 So. 2d 938 (Fla. 2d DCA 1999) [table]. The mandate issued December 9, 1999.

Carter filed a pro se motion to reduce, modify, or mitigate his sentence. The motion was denied by an unappealable order entered April 7, 2000.

Carter filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 dated October 4, 2000. In his first ground, Carter raised various instances of ineffective assistance of trial counsel. In his second ground, Carter alleged he was improperly convicted of armed robbery and petit theft. On October 23, 2000, the state trial court summarily denied Carter's Rule 3.850 motion.

Carter appealed the summary denial. On October 12, 2001, the state district court of appeal reversed the summary denial of Carter's claims that his trial counsel was ineffective for not pursuing a voluntary intoxication defense and not moving to suppress Carter's confession. Carter v. State,  801 So.2d 113 (Fla. 2d DCA 2001). The summary denial was otherwise affirmed.

More particularly, the state court held, in relevant part, as follows:

Richard M. Carter seeks review of the trial court's order summarily denying his postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Carter raises four challenges to his judgment and sentence, two of which effectively allege error which is not conclusively refuted by the record. Accordingly, we reverse on those issues. We affirm the remainder of the issues without comment.

First,  Carter alleges that counsel was aware of facts and witnesses which established that Carter was chronically intoxicated for over two months before and during the commission of the crimes but failed to pursue voluntary intoxication as a defense. The trial court found that Carter failed to effectively allege prejudice because the evidence established that he was not intoxicated at the time of the offense. The court made the following findings:

First, the probable cause affidavits, detailing the actions of the Defendant and his co-defendant, indicate that some conscious level of planning went into the commission of these crimes. Second, the testimony at the sentencing hearing indicates that while the Defendant might have indulged in alcohol around the time the crimes were committed, he was not intoxicated. Detective Mallol testified at the Defendant's sentencing hearing. According to Detective Mallol, when he spoke with the Defendant after his arrest, he noted that the Defendant appeared to have been drinking. According to Detective Mallol, he did not consider him to be drunk, and the Defendant was able to speak coherently with the detective.

The Defendant also testified at this hearing. He specifically stated that he made no excuses for his conduct and that these crimes were "spur of the moment." He also testified that he had had primarily a good behavior record despite his "bad drinking problem." Upon further questioning by the Court,

the Defendant admitted that his codefendant might have provided a suggestion with regard to the crimes, but he had acted "upon his own impulses" and had not been coerced by his co-defendant into committing the crimes.

This evidence does not conclusively refute Carter's contention that he was intoxicated at the time of the offense. In fact, Detective Mallol's testimony that he noted that Carter appeared to have been drinking and Carter's testimony that he felt he had a drinking problem support Carter's allegation. While this evidence may be disputed with the detective's testimony that he did not believe that Carter was intoxicated or the fact that the crime involved planning, the resolution of this dispute is for the jury. Because voluntary intoxication was a defense to the specific intent crimes of robbery, kidnaping, burglary, aggravated assault, and petit theft at the time of the offenses, [FN1] and the record does not conclusively refute Carter's allegation that he was intoxicated at the time of the crime, we reverse and remand for an evidentiary hearing on the issue.

> FN1. Carter committed the offenses in question in October 1997. At that time voluntary intoxication was a defense to specific intent crimes. *Gardner v. State*, 480 So.2d 91, 92 (Fla.1985). However, section 775.051, Florida Statutes (1999), precludes the defense of voluntary intoxication for crimes committed after its effective date of October 1, 1999. Ch. 99-174, § 1, at 968, Laws of Fla.

Second, Carter argues that trial counsel was ineffective for failing to move to suppress his conviction on grounds that it was illegally obtained while he was under the influence of alcohol. The trial court denied relief on this issue, finding that it should have been raised on direct appeal and was thus barred in a rule 3.850 motion. However, claims that counsel was ineffective for failing to file a motion to suppress are cognizable in a rule 3.850 motion. *Wittemen v. State*, 779 So.2d 358, 359 (Fla. 2d DCA 2000). Confessions given while under the influence should be suppressed when "the confessor is intoxicated to the degree of mania or is unable to understand the meaning of his statements." *DeConingh v. State*, 433 So. 2d 501 (Fla. 1983) (citing *Lindsey v. State*, 63 So. 832 (Fla. 1913)). Because Carter's claim is not conclusively refuted by the record, we remand for attachment of portions of the record conclusively refuting this allegation or for an evidentiary hearing.

Affirmed in part; reversed in part and remanded. <u>Carter v. State</u>, 801 So.2d at 114-115.

On remand, evidentiary proceedings were held August 6, 2002, before the Honorable Marc Gilner, on Carter's claims that counsel rendered ineffective assistance by not moving to suppress his confession and not pursuing a defense of voluntary intoxication. By order filed August 20, 2002, the state  trial court judge made findings of fact and conclusions of law adverse to Carter and denied postconviction relief.

More particularly, the court after setting forth the procedural history, the testimony, and the law, found as follows:

Failure to File Motion to Suppress: Defendant alleges that counsel should have filed a motion to suppress his statement to Detective Mallol, suggesting that the statement was not voluntarily made. The testimony at the evidentiary hearing conclusively refutes this claim. The testimony bought out the following facts:

- The Defendant initiated contact with Detective Mallol (8/6/02 Tr. at 90-91);

- Detective Mallol read the Defendant his *Miranda* rights, and the Defendant waived these rights (8/6/02 Tr. at 21);

- The Defendant was in custody for some fourteen (14) hours before he spoke with Detective Mallol (8/6/02 Tr. at 20);

- The Defendant gave Detective Mallol specific details about the crimes, which coincided with information the detective had obtained independently from other sources (8/6/02 Tr. at 84);

- Although the Defendant maintained he was a "basket case" during the detective's questioning, Detective Mallol's testimony was that the Defendant did not exhibit any symptoms of the DT's, slurred speech, or hallucinations, and he believed the Defendant to be sober (8/6/02 Tr. at 84).

Defense counsel reviewed these facts, the Defendant's taped statement and the accompanying transcript, and the deposition testimony of the various deputies involved in the case before making a strategic decision not to pursue a motion to suppress.

Counsel's strategic decisions will not be second guessed on collateral attack. *See Johnson v. State,* 769 So. 2d 990, 1001 (Fla. 2000); *Remeta v. Dugger,* 622 So. 2d 452, 455 (Fla. 1993). The fact that Defendant and his present counsel disagree with former counsel's strategic decision not to pursue what was, at best, a "collateral claim" of suppression does not render former counsel ineffective. *Stewart v. State,* 801 So. 2d 59 (Fla. 2001). "Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternate courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State,* 768 So. 2d 1037, 1048 (Fla. 2000).

Finally, although counsel wishes in hindsight, that he would have pursued a motion to suppress (8/6/02 Tr. at 16), *Strickland* requires this Court to reject the "distorting effects of hindsight" and evaluate the conduct from counsel's perspective at the same time. *See Strickland,* 466 U.S. at 690. When evaluated in terms of the facts known to counsel prior to the disposition of these cases, this Court finds that counsel's decision not to proceed with a motion to suppress was a legitimate strategic decision under the norms of professional conduct.

Failure to raise Voluntary Intoxication Defense: Defendant claims that his counsel was ineffective for failing to raise a voluntary intoxication defense on his behalf. The Court notes that voluntary intoxication was a defense to several of the specific intent crimes charged against the Defendant. *See Leschka v. State,* 691 So. 2d 535 (Fla. 2d DCA 1997). In order for voluntary intoxication to be a viable defense,  however, the intoxication must be such that the defendant was incapable of forming the mental intent necessary to commit the crime. The use of alcohol to the extent that it merely diminishes perceptions or clouds reason and judgment does *not* excuse the commission of a criminal act. *See* § 3.04(g), Fla. Standard Criminal Jury Instructions.

The testimony presented at the evidentiary hearing did not establish that the Defendant was intoxicated to such a point so as to be unable to form the intent necessary to commit the crimes of which he was convicted. Although the Defendant claims he had been drinking steadily for a two-week period prior to the crimes and had a longstanding history of drinking problems, he also admitted that, shortly before these crimes, he had been sober for six years. In his initial interview with the investigator for the Public Defender, one day after his arrest, he admitted to drinking, but denied that he was intoxicated during the commission of these crimes. (8/6/02 Tr. at 28-29) . Excerpts from various depositions of the deputies involved in the Defendant's arrest contained statements indicating a slight odor of alcohol on his breath, and statements that the Defendant was saying "silly" things

and had done "something stupid tonight". (8/6/02 Tr. at 41-48). None of these deputies concluded, however, that the Defendant was drunk.

The Defendant's physical condition must be weighed against the facts underlying the commission of the crimes, which indicated an elevated level of planning and preparation. Both perpetrators wore gloves and masks, both had firearms, both made specific threats of violence against the victims, both participated in constricting the movement of the victims and, in the Hungry Howie's robbery, they laid in wait for a victim. In neither case, did the victims indicate that the perpetrators appeared to be drunk.

Again, based on these facts and the information known to counsel, he made a tactical decision not to present a defense of voluntary intoxication. Counsel testified that the defense has not been successful, to his knowledge, in his 17 years of practice and, given the level of planning and preparation by the perpetrators in this case, in his judgment, it would not have been effective here. (8/6/02 Tr. at 22-25). In counsel's opinion, any degree of intoxication would have been more effective as an argument for mitigation of sentence, rather than as a direct defense to the charges. (8/6/02 Tr. at 24). This court declines to second-guess counsel's decision not to present a voluntary intoxication defense, finding it to be a reasonable decision under the norms of professional conduct. It is therefore,

ORDERED AND ADJUDGED that the Defendant's Motion for postconviction Relief is DENIED.

Carter's motion for rehearing was denied on September 23, 2003.

Carter appealed.  On March 9, 2003, the state district court of appeal per curiam affirmed the denial of relief in case no. 2D02-4875. Carter v. State, 847 80. 2d 465 (Fla. 2d DCA 2003) [table]. The mandate issued June 3, 2003.

Carter then timely filed the present federal petition for writ of habeas corpus.

STANDARDS OF REVIEW

Because Carter filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d

880, 889-90 (11th Cir. 2003); <u>Maharaj v. Sec'y of Dept. of Corrections</u>, 304 F.3d 1345,

1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of

state habeas judgments," <u>Fugate v. Head</u>, 261 F.3d 1206, 1214 (11th Cir. 2001), in order

to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002); <u>see</u>, <u>Bell</u>

<u>v. Cone</u>, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating

state-court ruling is highly deferential, which demands that state-court decisions be given

benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this

Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Price v. Vincent</u>, 123 S.Ct. 1848, 1852-53 (2003); <u>Clark v. Crosby</u>,

335 F.3d 1303, 1308 (11th Cir. 2003); <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir.

2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set

forth by the United States Supreme Court at the time the state court issues its decision.

<u>Lockyer v. Andrade</u>, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on

point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is

contrary to clearly established governing federal law.  <u>Mitchell v. Esparza</u>, 124 S.Ct. 7, 10

(2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford

v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

DISCUSSION

A review of the record demonstrates that, for the following reasons, Carter's petition for writ of habeas corpus must be **DENIED**.

Ground One

Carter alleges that his trial counsel rendered ineffective assistance. He faults his counsel for not investigating an insanity defense, not investigating purported unconstitutional acts of "de facto" officers, and not seeking to suppress his confession as involuntary. In his supporting facts, Carter contends he has an extensive history of mental illness "super-induced"  by alcoholism, including hospitalization for that condition. Asserting that all his past crimes involved intoxication, Carter claims he was chronically intoxicated and hospitalized for alcoholism during the time frame of the offenses to which he pled.

Carter contends that during his booking for these offenses, he went into withdrawal and suggests his confession to a detective was given in that condition. Claiming he furnished this purported information to his counsel, Carter faults his counsel for not taking steps to secure a psychiatric evaluation, and the assistance of an expert psychiatrist or toxicologist; and for not advising him on the viability of an insanity defense "super-induced" by long-term intoxication.

Carter also faults his trial counsel for not attacking his arrest on grounds that the arresting officers were not bonded or not properly sworn. Further, he contends he was falsely charged with carrying a concealed weapon, claiming he had a permit. Then, asserting his codefendant's criminal history included bank robbery, Carter claims the codefendant had expertise, necessary for planning [ostensibly, the crime, or crimes, to which Carter pled].

Portraying himself as ignorant of his state direct remedies, Carter claims that collaterally he became aware of the "shocking" extent of counsel's purported ineffectiveness and "spurious" advice.  (Doc. 1, at p. 4b). But for the claimed omissions, Carter asserts, there was "more than a reasonable chance" the outcome "would have taken an entirely different course."

Ground one is procedurally barred, with the exception of two claims of ineffective assistance of counsel -- namely, the alleged failure to file a motion to suppress Carter's confession and the alleged failure to pursue a voluntary intoxication defense which were the subject of the state evidentiary hearing.

Carter's remaining allegations as to the authority of the officers and sufficiency of the evidence concern matters preceding entry of Carter's negotiated plea of nolo contendere and were waived by entry of his voluntary plea. It is well-settled that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights, including the privilege against compulsory self-incrimination, the right of confrontation, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime beyond a reasonable doubt.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

A plea of guilty is even more than a confession, which admits that the accused did various acts; it is itself a conviction. Nothing remains but judgment and punishment. Boykin

v. Alabama, 395 U.8. 238 (1969). See also, Grantling v. Balkcom, 632 F.2d 1264 (5th Cir. 1980) (plea of guilty, if intelligently and voluntarily made prevents a defendant from raising in a habeas corpus proceeding claims of constitutional violations relating to events occurring prior to the entry of the plea).

The proposed instances of ineffectiveness of counsel raised  by Carter concerning the evidence supporting his conviction for carrying a concealed weapon and the arresting officers' authority do not bear upon the voluntariness of his plea; rather they pertain to matters preceding entry of his nolo contendere plea. As previously noted, a voluntary guilty plea waives all non-jurisdictional defects in a criminal proceeding. See United States v. Smallwood, 920 F.2d 1231, 1240 (5th Cir. 1991) This includes claims alleging ineffective assistance of counsel that do not implicate the validity of the plea itself. See Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) ("Smith's guilty plea was voluntarily and knowingly made, [t]hus he cannot now attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea."); see also, United States v. Glinsey, 209 F.3d 386, 392 (5th Cir.) (voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant, including claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered guilty plea involuntary), cert. denied, 531 U.S. 919 (2000).

Federal habeas corpus review of a conviction entered on a guilty plea based on alleged  constitutional infirmities in pretrial proceedings can be entertained when state law permits a defendant to appeal the results of such pretrial proceedings. Lefkowitz v.

Newsome, 420 U.S. 283, 289 (1975).  In Florida, a plea of no contest, or nolo contendere, has the same legal effect in a criminal proceeding as a guilty plea. Vinson v. State, 345 So.2d 711, 715  (Fla. 1977) (plea of nolo contendere, or no contest, admits the facts for the purpose of the pending prosecution and to that extent has the same effect as a plea of guilty insofar as it gives the court the power to punish).

Pursuant to state law, a defendant who pleads guilty or nolo contendere without preserving the right to contest court rulings that preceded the plea in the criminal process may appeal only issues which occur contemporaneously wi th entry of the plea. Robinson v. State, 373 So. 2d 898 (Fla. 1979). In such circumstances, only the following issues are appealable: 1) the subject matter jurisdiction, 2) the illegality of the sentence, 3) the failure of the government to abide by the plea agreement, and 4) the voluntary and intelligent character of the plea. Robinson v. State, 373 So. 2d at 902. If the record raises issues concerning the voluntary or intelligent character of the plea, that issue must first be presented to the trial court in accordance with the law and standards pertaining to a motion to withdraw a plea.  Id. An issue is  preserved for appeal on a nolo contendere plea only if it is dispositive of the case. Brown v. State, 376 So. 2d 382, 384 (Fla. 1979); State v. Carr, 438 So. 2d  826, 828 (Fla. 1983).

With respect to Carter's Rule 3.850 claims concerning the arresting officers' authority, Carter defaulted his claim by entering his plea without reserving these claims for review and not raising them on direct appeal. In denying Carter's claim that counsel did not investigate his complaint that the arresting officers were not properly bonded, the state trial court expressly applied state procedural law in holding that entry of a plea waives a

-14-

collateral attack on the validity of a search or seizure or admissibility of such evidence and further, even if the issue could have been raised on appeal, the issue was foreclosed collaterally. This Circuit has long recognized this aspect of Florida law. Sullivan v. Wainwright, 695 F. 2d 1306, 1310 (11th Cir.) (claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), cert. denied, 464 U.S. 922 (1983).

The state decision, expressly applying the state bars, followed by an affirmance without discussion, rests upon independent and adequate state procedural grounds barring federal habeas review. There is a presumption that a silent affirmance rests on the same grounds as the last reasoned decision on the issue or claim. Ylst v. Nunnemaker, 501 U.S. 797 (1991); Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir.)(where state trial court finds procedural default, state appellate court's silent affirmance is a finding of procedural default by the last state court to rule on the question) cert. denied, 498 U.S. 832 (1990)).

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in Murray v. Carrier, 477 U.S. 478, 496 (1986). Cause must ordinarily be something external to the defense. (Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. Edwards v. Carpenter, 529 U.S. 446, 453 (2000) ineffective

assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

To the extent Carter attempted to press defaulted substantive claims of constitutional error collaterally, the claims were barred and Carter failed to show ineffectiveness of counsel as cause to excuse his defaults under Wainwright v. Sykes.  Any, or further, cause allegation is now barred by the two-year limit of Rule 3.850 and the state's successive petition doctrine governing successive Rule 3.850 motions. Foster v. State, 614 So. 2d 455, 458 (Fla. 1992);  Zeigler v. State,  632 So. 2d 48, 51 (Fla. 1993).

In addition, Carter's underlying substantive Fourth Amendment claims are barred by Stone v. Powell, 428 U. 8. 465, 494-495 (1976). In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that a state court's determination that a particular search or seizure does not violate the defendant's Fourth Amendment rights is not reviewable on federal habeas, so long as the defendant had a full and fair chance to litigate the Fourth Amendment claim in the state court.  The decision in Stone rested on prudent concerns that counseled against the application of the Fourth Amendment exclusionary rule on federal collateral review. Stone, 428 U.S. at 494-95, n.37. The Court reasoned that the Fourth Amendment exclusionary rule was not a personal constitutional right.  Rather, the rule was designed to deter future Fourth Amendment violations, and its application on federal habeas many years after the alleged police misconduct would only marginally advance the goal of deterrence.  Moreover, allowing federal habeas review would exclude ordinarily reliable evidence, waste judicial resources, frustrate the necessity of finality and increase friction between federal and state systems. Stone, 428 U.S. at 491.

Florida provided Carter the opportunity for full and fair litigation of the constitutionality of any seizure of evidence or his person. Accordingly, Stone bars federal habeas review of his substantive Fourth Amendment issues. Bradley v. Nagle, 212 F.3d 559 (11th Cir. 2000) (federal courts are precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided "an opportunity for full and fair litigation" of those claims (citing, Stone, 428 U.S. at 465).

With respect to the claims of omission of counsel upon which Carter was afforded an evidentiary hearing, Carter's claims fail under the AEDPA's standards of review.   The two-part test of Strickland v. Washington applies to a challenge to a guilty plea based on a claim of ineffective assistance of counsel. Hill v. Lockhart, 474 U. S. 52, 58 (1985). The state decision in Carter's case is not "contrary to" Strickland. Carter does not suggest otherwise, and he does not demonstrate that the state court decision resulted in an unreasonable application of Strickland or an unreasonable determination of the facts in light of the evidence.

For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, 466 U. S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' " Chandler v. United States, 218 F. 3d 1305, 1313 (11th Cir. 2000) (en banc) (citing Burger v. Kemp, 483 U.S. 776 (1987), cert. denied, 531 U.S. 1204 (2001).  Judicial scrutiny of counsel's performance must be highly deferential, and courts must avoid second-guessing counsel's performance. Strickland, 466 U.S. at 689.

Under the prejudice prong of <u>Strickland</u>, a petitioner alleging ineffective assistance in a guilty plea context must allege, and show that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u> at 56- 59. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."

Carter failed to establish the factual underpinnings for his theories of ineffectiveness of counsel in state court, Following an evidentiary hearing, the state trial court detailed the factors that led to trial counsel's decisions not to file a motion to suppress and not to pursue a voluntary intoxication defense, (See appellate record of case 2D02-4875, Vol. 2, R 111). The state court found that counsel, in deciding not to file a motion to suppress, considered the deposition testimony of the officers involved in the apprehension of Carter and reviewed his client's taped confession, as well as the transcript of the confession. The state court found that counsel's decision not to file a motion to suppress was influenced by the following additional factors: Carter was in custody for fourteen hours prior to his confession; Carter initiated the conversation with the detective; the sound of his voice on the videotaped confession; Carter waived his constitutional rights: and Carter provided very specific details about the crimes in his confession.

Carter does not overcome the presumption of correctness of these factual findings. 28 U.S.C. § 2254(e)(1). Moreover, it is objectively reasonable to conclude, based on counsel's evidentiary testimony, that counsel's decision not to file a motion to suppress was based on an informed, reasonable assessment that the proposed motion would have little

or no chance of success. Johnson v. Singletary, 883 F. Supp. 1535  (M.D. Fla. 1995) (counsel cannot be labeled ineffective for failing to raise issues which do not have merit).

The claim of omission also fails under the prejudice prong of Strickland. The plea terms included an overall sentencing cap for both of Carter's cases shielding him from a more severe potential sanction of life in prison. (R 175) Carter did not,  in his Rule 3.850 proceedings, allege, nor present objective facts showing he would have insisted upon proceeding to trial and risking a more severe penalty in either of his cases. The state's evidence independent of the confession was compelling. As the former prosecutor pointed out at the evidentiary hearing, the codefendant had been twice convicted with a confession in the Hungry Howie robbery case. (Vol.  2,  R 193).  It is objectively reasonable to conclude that Carter failed to show that but for counsel's not seeking to suppress his confession, there was a reasonable probability he would have proceeded to trial and risked upon conviction, a more serious sentencing outcome, including potential consecutive sentencing exposure on the various counts in his two cases.   Carter also does not show that he would have been willing to risk that charges nolle prossed prior to the plea might be refiled. (See Record for Case 2D98-3241, Vol. 1, R 87).  Further, Carter does not show he would have rejected the negotiations that did not require him to testify concerning the codefendant. (See 2D02-4865, Vol. 2,  R 175, 177).

With respect to Carter's claim of omission concerning the defense of voluntary intoxication, counsel did not consider voluntary intoxication to be a viable defense and had never seen the defense succeed in the Twelfth Circuit. Nonetheless, as the state trial court found, counsel would have counseled Carter regarding the defense and the fact that

Carter's alcohol problems would have been far more effective as mitigating evidence for sentencing than as a direct defense to the crimes charged. (Vol. 2, R 111)   The state trial court found that counsel felt the chance of a successful intoxication defense was very small, considering that counsel had never seen the defense successfully raised, and the state's evidence demonstrating that Carter and his codefendant wore masks and gloves, carried guns, made specific threats of violence, and lay in wait for a least one of their victims. (Vol. 2, R 111).

It is objectively reasonable to reach the factual findings made by the state trial court, and Carter does not overcome the presumption of correctness of those factual findings. It is also objectively reasonable to conclude that at least one reasonably competent attorney such as Carter's counsel could forego pursuit of an intoxication defense in his case.  Carter did not show that on the date of the offenses he was intoxicated to the extent required to support a successful defense of voluntary intoxication in Florida.  In view of the wealth of evidence indicating Carter was able to form the required intent, counsel was not constitutionally obliged to engage in further investigation of an intoxication defense.  "The Constitution does not require defense counsel to pursue every possible line of defense until it withers away or bears fruit." Spaziano v. Singletary, 36 F.3d 1028, 1040 (11th Cir. 1994), cert. denied, 115 S.Ct. 911 (1995).

It is also objectively reasonable to conclude that even if counsel had pursued a voluntary intoxication defense, there was no reasonable probability that Carter would have rejected the plea negotiations and risked a more serious penalty upon conviction at trial. In view of Carter's deliberate acts and capability to recall the events to police, it can be

objectively concluded that even if an intoxication defense were used, the defense was very vulnerable to attack by the State.  Faced with evidence that Carter had the capability to form the required intent, Carter's counsel secured on his behalf the state's agreement to a sentencing cap.  Carter's federal petition does not show that he was willing to proceed to trial with a vulnerable defense and risk a more serious sentence if convicted.  Therefore, the state's adjudication concerning counsel's performance regarding the proposed voluntary intoxication defense resulted in a reasonable application of <u>Strickland</u> under the prejudice prong.

The same result occurs with regard to the remaining allegations in ground one, even if, for the sake of argument, the allegations are treated as exhausted. The state courts' decisions  resulted in a reasonable application of <u>Strickland</u> under either prong.

With respect to each remaining assertion, Carter did not plead sufficient  facts to overcome the strong presumption that his counsel was effective and made all significant decisions in the exercise of reasonable professional judgment. Moreover, any self-serving claim by Carter that he would have proceeded to trial had counsel performed as proposed does not suffice to meet his burden. A mere allegation by the defendant that he would have insisted on going to trial, although required, is insufficient to establish prejudice. <u>Miller v. Champion</u>,  262 F.3d 1066, 1072 (10th Cir. 2001) (defendant's mere allegation that he would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient to entitle him to relief on an ineffective assistance claim; rather, the Court looks to factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial); <u>see also</u>, <u>United States v. Arvanitis</u>, 902 F.2d 489, 494 (7th Cir.

1990). Because Carter's Rule 3.850 motion did not set forth sufficient facts which, if proven, would show there was a reasonable probability that he would insisted upon trial had counsel performed differently, his claims of omission of counsel could be disposed of on the prejudice prong.

Even if Carter's claim were viewed as an involuntary plea claim, the claim fails.  The standard for determining the validity of a plea is whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant.  North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969); Hill, 474 U.S. at 56. If a defendant understands the charges against him, understands the consequences of the guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.  Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991).

The state record of the plea hearing demonstrates that Carter understood the charges against him and the possible penalties he faced. (Vol.  1,  R 89-93). Carter's responses during the plea colloquy reflect that he read his plea form entitled "Acknowledgment and Waiver of Rights";  his attorney had explained the rights Carter was waiving by entering a plea, and that Carter understand these rights. (Vol. 1, R 94-95, 135) Carter confirmed he had not been threatened or coerced to plead or promised anything other than what was discussed in open court, and that he signed his plea form of his own free will. (Vol. 1,  R 94-95).

In addition, Carter acknowledged he had consulted with his attorney and that all of his questions had been answered by counsel to his satisfaction. (Vol. 1,  R 96).  Carter,

given the opportunity, indicated he had no questions at the time he entered his plea. (Vol.

1, R 98) Following the state's recitation of a factual basis, Carter confirmed he had no

questions. (Vol. 1, R 101)  The state court found at the conclusion of the plea colloquy

that a factual basis existed and Carter's plea was freely and voluntarily entered.

Representations of the defendant at a plea proceeding as well as any findings made

by the judge accepting the plea constitute a formidable barrier in any subsequent collateral

proceedings. Solemn declarations in open court carry a strong presumption of verity.

Blackledge v. Allison, 431 U.S. 63, 73- 74 (1977). This presumption was not overcome by

Carter's Rule 3.850 or section 2254 allegations.

The record demonstrates conclusively that Carter entered his plea voluntarily and

knowingly with full awareness of the relevant circumstances and likely consequences of

the plea, Boykin v. Alabama, 395 U.S. at 242, and that his plea represented a voluntary

and intelligent choice among the alternative courses of action open to him. North Carolina

v. Alford, 400 U.S. at 31. Thus, the state court decision resulted in a reasonable application

of established precedent of the Supreme Court and a reasonable determination of the facts

in light of the evidence.

Ground one does not warrant habeas corpus relief.

### Ground Two

Carter contends he was improperly convicted of both armed robbery and the

necessarily lesser included offense of petit theft of the same property. Ground two is a

state law issue for which subject matter  federal habeas corpus jurisdiction does not lie.

It is not the province of a federal court to reexamine state-court determinations on state-law

questions. Estelle v. McGuire, 502 U.S. 62, 68 (1991).   Federal   relief   is   available to correct only constitutional injury.  Wainwright v. Goode, 464 U.S. 78 (1983); Engle. v. Isaac, 456 U.S. 107, 119 (1981); Smith v. Phillips, 455 U.S. 209 (1982).

Moreover, even if ground two presents a federal question, the claim is procedurally barred. Carter's negotiated voluntary plea of nolo contendere to these charges, entered without reservation of any issue for appeal, operated to waive any claim of federal constitutional error regarding Carter's convictions for armed robbery and petit theft.

In Dermota v. United States, 895 F. 2d 1324 (11th Cir.), cert. denied, 498 U.S. 837 (1990), the Eleventh Circuit held that where a defendant freely, voluntarily, and accompanied by his attorney enters into a plea agreement whereby he pleads guilty or the equivalent, he waives the right to challenge the offenses on the basis of a double jeopardy objection. See also, United States v. Broce, 488 U.S. 563 (1989).  State law is in accord. Novation v. State, 634 So. 2d 607 (Fla. 1994)(where the record reflects a bargained-for plea, any double jeopardy attack on the plea-based conviction is waived); Melvin v. State, 645 So. 2d 448 (Fla. 1994) (defendant who knowingly entered plea agreement thereby waived constitutional protection of double jeopardy); West v. State, 758 So.2d 1232, 1233 (Fla. 4th DCA 2000) (by entering into the negotiated plea with the State, West waived double jeopardy claim).

In Carter's case, though his plea was "open" in the sense his actual sentence was to be determined as sentencing, he clearly gained the benefit of an overall sentencing cap by virtue of his negotiated plea of nolo contendere. Carter waived the right to challenge his

plea-based convictions on double jeopardy grounds by entry of his free and voluntary plea where he did not reserve any federal jeopardy claim for appeal.

Moreover, Carter did not attack his convictions for armed robbery and petit theft on federal grounds in a motion to withdraw his plea prior to sentencing. Nor did he, when given the opportunity, assert on direct appeal that his convictions violated the constitutional protection against double jeopardy.   Because Carter did not preserve any constitutional claim upon entry of his voluntary, negotiated plea and did not raise the claim on direct appeal, Carter was barred from raising his ground collaterally in a Rule 3.850 motion.

The state trial court expressly applied state procedural rules in this regard in finding that Carter voluntarily entered a negotiated plea to the charges in return for a sentence capped at no more than 26.5 years, and that  the alleged error should have been raised on direct appeal and was foreclosed on collateral attack.  The state district court of appeal, though reversing the summary order on other grounds, affirmed without comment the summary denial of this claim.  Accordingly, it must be presumed the state court decision rests upon the independent and adequate state procedural grounds barring federal review of ground two of the instant petition. See <u>Harmon v. Barton</u>, <u>supra</u>; <u>see also</u>, <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549  (11th Cir. 1997)(rejecting contention that court could make an independent review of whether state had correctly applied its procedural default rule).

Carter did not show cause to excuse his defaults in his Rule 3.850 motion, and any cause allegations are now barred by the two-year limitation of Rule 3.850 and the state's successive petition doctrine.   He, therefore, has failed to overcome his procedural default on this issue under <u>Wainwright v. Sykes</u>. Even if Carter could present requisite cause to

excuse his default,  he would still fail because he does not show that there was actual prejudice and he does not raise a colorable claim of actual innocence. In fact, Carter admitted his guilt of the offenses to which he pled at sentencing. (Direct record, case no. 2D 98-3241, Vol.1,  R 67)

Alternatively, Carter' s ground can be denied based on independent and adequate state substantive grounds. The factual basis given by the state during the plea hearing concerning the armed robbery charged in count one of the amended information in case no. 97- 2865F reflects that cash belonging to Hungry Howie's was taken during the course of the armed robbery by a masked Carter and his codefendant. (Vol. 1,  R 100, 129) The petit theft count in the amended information alleged a taking of property of others and set forth the names of individuals and/or, in the alternative, Hungry Howie's. (Vol.  1,  R 131)

In his Rule 3.850 motion, Carter did not point to objective facts showing that the counts under collateral attack pertained to the same property.  Even if, the state decision is viewed as an adjudication of Carter's Rule 3.850 claim, the state decision settles that, as a matter of state law, the robbery and petit theft counts did not violate state law governing offenses and necessarily included lesser offenses concerning the same property.  A federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment; this rule applies whether the state law ground is substantive or procedural.   See Eagle v. Linahan, 279 F.3d 926, 936 (11th Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).

Ground two does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Carter's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Carter and to close this case.

ORDERED in Tampa, Florida, on July 21, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Richard M. Carter